FILED
U.S. DISTRICT COURT
AUGUSTA DIV.
2012 MAY 14 PM 3: 51
CLERK
SO. DIST. OF GA.

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| CATHERINE V. RHONEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV 111-011 |
| ) | |
| MICHAEL J. ASTRUE, Commissioner of ) | |
| Social Security Administration, ) | |
| ) | |
| Defendant. ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Catherine V. Rhoney ("Plaintiff") appeals the decision of the Commissioner of Social Security ("Commissioner") denying her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

I.  **BACKGROUND**

Plaintiff applied for DIB and SSI on August 17, 2007, alleging a disability onset date of July 3, 2007. Tr. ("R."), pp. 138-45, 146-49.[1] The Social Security Administration denied

---

[1] Although the ALJ indicated in his decision that Plaintiff applied for these benefits on July 26, 2007, Plaintiff's applications for DIB and SSI are dated August 17, 2007. R. 12.

these applications initially and upon reconsideration. R. 82-85, 86-89, 93-96, 97-100. Plaintiff then requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a video hearing on June 15, 2009. R. 24-53, 109-15. Plaintiff, who was represented by counsel, appeared and testified on her own behalf at the hearing, R. 31-47; the ALJ also heard testimony from Donna Mancini, a Vocational Expert ("VE"), R. 49-52. On July 28, 2009, the ALJ issued an unfavorable decision. R. 9-21.

Applying the five step sequential process required by 20 C.F.R. §§ 404.1520 and 416.920, the ALJ found:

1. The claimant has not engaged in substantial gainful activity since the alleged onset of disability (20 C.F.R. §§ 404.1571 *et seq.* and 416.971 *et seq.*).

2. The claimant has the following severe impairments: chronic obstructive pulmonary disease, coronary artery disease, and hypertension (20 C.F.R. §§ 404.1520(c) and 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926).

4. The claimant has the residual functional capacity ("RFC") for a range of light work,[2] except that the claimant is limited to no more than occasional climbing of stairs and ramps. Further, the claimant should never climb

---

[2]Light work involves:

lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. §§ 404.1567(b), 416.967(b).

2

ladders or scaffolds or perform any balancing, and she must avoid concentrated exposure to unprotected heights and moving machinery, temperature extremes, chemicals, dust, fumes, smoke, and high humidity. The claimant's past relevant work as a waitress and convenience store clerk did not require the performance of work-related activities precluded by the claimant's RFC (20 CFR §§ 404.1565 and 416.965).

R. 14-19. Because the ALJ determined that Plaintiff could perform her past relevant work, the sequential evaluation process stopped, see 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv), and the ALJ concluded that Plaintiff was not under a 'disability' as defined in the Social Security Act, at any time through the date of the decision (20 CFR §§ 404.1520(e) and 416.920(e)). R. 20. When the Appeals Council ("AC") denied Plaintiff's request for review, the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action in the United States District Court for the Southern District of Georgia requesting a reversal or remand of that adverse decision.

Plaintiff now argues that the Commissioner's final decision is not supported by substantial evidence because: (1) the ALJ erroneously determined that Plaintiff's congestive heart failure was not a severe impairment; (2) the ALJ failed to adequately develop the record; (3) the ALJ's hypothetical question to the VE failed to include limitations associated with all of Plaintiff's severe impairments; and (4) the evidence demands a finding that Plaintiff is disabled under the Medical Vocational Guidelines ("the Grids"). (See doc. no. 8 (hereinafter "Pl.'s Br."); doc. no. 12 (hereinafter "Pl.'s Reply Br.").) The Commissioner maintains that the decision to deny Plaintiff benefits was supported by substantial evidence and should be affirmed. (See doc. no. 11 (hereinafter "Comm'r's Br.").)

## II. STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, Richardson v. Perales, 402 U.S. 389, 390 (1971); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); and (2) whether the Commissioner applied the correct legal standards. Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986). When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's. Cornelius, 936 F.2d at 1145. Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding. Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them. Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991). Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239). If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner's decision even if the evidence preponderates in favor of the claimant. Id. Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence. McCruter v. Bowen, 791 F.2d

4

1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions is not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

#### A. The ALJ's Severity Determination is Supported by Substantial Evidence

Plaintiff first argues that the ALJ erroneously determined that her congestive heart failure ("CHF") is not a severe impairment. Pl.'s Br., p. 9. The Commissioner argues that the ALJ's determination that Plaintiff's CHF is non-severe is supported by substantial evidence. Comm'r's Br., pp. 4-6. The Court resolves the matter as follows.

To begin, it will be helpful to explain what constitutes a "severe" impairment under the Social Security Act. A severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. §§ 404.1521(a), 416.921(a) ("Non-severe impairment(s). An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities."). Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). Examples include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing,

        pulling, reaching, carrying, or handling;
        (2) Capacities for seeing, hearing, and speaking;
        (3) Understanding, carrying out, and remembering simple instructions;
        (4) Use of judgment;
        (5) Responding appropriately to supervision, co-workers and usual work situations; and
        (6) Dealing with changes in a routine work setting.

Id.

Thus, in order to show a severe impairment, Plaintiff bears the burden of demonstrating that her physical problems significantly affect her ability to perform basic work activities. See McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986); Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (*per curiam*). At the second step of the sequential evaluation process:

> If you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience.

20 C.F.R. §§ 404.1520(c), 416.920(c). However, the severity test at step two of the sequential process is designed to screen out only clearly groundless claims. Stratton v. Bowen, 827 F.2d 1447, 1452 (11th Cir. 1987) (citing Baeder v. Heckler, 768 F.2d 547, 551 (3d Cir. 1985) for the proposition that the severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working").

In fact, the Eleventh Circuit describes step-two as the "slight abnormality" test. Bridges v. Bowen, 815 F.2d 622, 625 (11th Cir. 1987) (*per curiam*) (citing Brady, 724 F.2d 914). Under this test,

6

> [A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience.

Id. As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel, 800 F.2d at 1031. The claimant's burden is "mild," id., and "the claimant need only show that an abnormality's effect is not so minimal that it would not interfere with [her] ability to work irrespective of age, education, or work experience." Cantrell v. Bowen, 804 F.2d 1571, 1573 (11th Cir. 1986) (*per curiam*).

In addition, to be considered "severe," an impairment must meet the duration requirement found in 20 C.F.R. §§ 404.1509 and 416.909, which provides that an impairment must be "expected to result in death [or] it must have lasted or must be expected to last for a continuous period of at least 12 months." 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii); see Tauber v. Barnhart, 438 F. Supp. 2d 1366, 1372 (N.D. Ga. 2006). With these basic principles in mind, the Court turns to Plaintiff's argument.

In determining that Plaintiff's CHF was non-severe, the ALJ noted that on July 5, 2007, Plaintiff saw James C. Sheppard, M.D., Plaintiff's treating physician, when she was admitted to the hospital for suspected pneumonia and shortness of breath. R. 17, 268. Dr. Sheppard diagnosed Plaintiff with pneumonia, chronic obstructive pulmonary disease exacerbation, hypertension, anemia, and tobacco abuse disorder, and he tentatively diagnosed her with CHF, noting: "There was some question . . . as to whether or not she may have a component of congestive heart failure." R. 17, 268, 270. The ALJ noted that when Plaintiff

returned to Dr. Sheppard nearly a year and a half later on January 13, 2009, she had no signs of CHF despite being off her medications for over a year. R. 15, 17, 478. Further, the ALJ observed that during the January 2009 visit, Plaintiff was cautioned on the risks of her non-compliance with her medication and told that if she had money to purchase cigarettes (Plaintiff was also counseled on smoking cessation), then she should have money to purchase her medications. R. 17, 478. The ALJ noted that Plaintiff later "had a significant exacerbation" in her CHF condition when she was admitted to the hospital for bronchitis on May 12, 2009; Dr. Sheppard noted that Plaintiff improved on antibiotics and steroids, and her discharge diagnoses "included 'Tobacco abuse disorder' and 'Noncompliance with medical advice.'" R. 17, 476-77, 488-90. Plaintiff also reported "doing much better" during a follow-up appointment one week later. R. 476.

After thoroughly addressing Dr. Sheppard's treatment notes relating to Plaintiff's CHF, the ALJ observed that in the span of two years, Plaintiff exhibited only two exacerbations in her CHF condition – a mild exacerbation in July of 2007 and a more significant exacerbation in May of 2009; Plaintiff's CHF was otherwise noted to be "asymptomatic." R. 15, 17, 476-77, 488-90. Based on the two-year period between Plaintiff's CHF symptoms, the ALJ concluded that Plaintiff's CHF was non-severe because it did not meet the 12-month duration requirement. R. 15.

In short, the ALJ cited specific medical evidence from the record to support his finding that Plaintiff's CHF was non-severe and did not significantly limit Plaintiff's ability to perform basic work activities. See 20 C.F.R. §§ 404.1521(a), 416.921(a). By contrast, although Plaintiff asserts that "[t]here are definitely physical limitations associated with

8

CHF," she does not elaborate as to what these are, nor does she explain how such limitations interfere with *her* ability to work. Pl.'s Br., p. 10. Plaintiff argues, however, that because Dr. Sheppard diagnosed her with CHF, this somehow warrants an automatic finding that her CHF is severe. Id. at 9-10.

Of course, it is well-settled that in the Eleventh Circuit a treating physician's opinion must be given substantial weight. Hillsman v. Bowen, 804 F.2d 1179, 1181 (11th Cir. 1986) (*per curiam*). Refusal to give a treating physician's opinion substantial weight requires that the Commissioner show good cause. Schnorr v. Bowen, 816 F.2d 578, 581 (11th Cir. 1987). "The [Commissioner] must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error." MacGregor v. Bowen, 786 F.2d 1050, 1053 (11th Cir. 1986).

That having been said, the Commissioner is not obligated to agree with a medical opinion if the evidence tends toward a contrary conclusion. Sryock v. Heckler, 764 F.2d 834, 835 (11th Cir. 1985) (*per curiam*). Indeed, a treating physician's opinion may be properly discounted if it is unsupported by objective medical evidence, is merely conclusory, or is inconsistent with the physician's medical records. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997); Edwards v. Sullivan, 937 F.2d 580, 583-84 (11th Cir. 1991). In addition, under Social Security Ruling ("SSR") 96-5p, the determination of disability regarding a Social Security claim is reserved to the Commissioner, and treating source opinions on issues reserved to the Commissioner are never entitled to controlling weight or special significance. SSR 96-5p; see also 20 C.F.R. §§ 404.1527(e), 416.927(e).

Here, Plaintiff's argument that Dr. Sheppard's mere diagnosis that she had CHF is

9

an insufficient basis for finding her CHF to be a severe impairment. As the Commissioner correctly points out, "[T]he mere existence of [an] impairment[] does not reveal the extent to which [it] limit[s] her ability to work." Comm'r's Br., p. 4 (citing Moore v. Barnhart, 405 F.3d 1208, 1213 & n.6 (11th Cir. 2005) (*per curiam*)); see also McCruter, 791 F.2d at 1547 ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work . . . ."). Indeed, the ALJ's decision reflects that he clearly considered Dr. Sheppard's treatment notes and diagnoses. However, because Plaintiff had only experienced two exacerbations in her CHF over the course of two years, the ALJ reasonably concluded that this impairment had not lasted and could not be expected to last for a continuous 12-month period, and was therefore not a severe impairment. See 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii), 416.909, 416.920(a)(4)(ii). In sum, the ALJ's determination that Plaintiff's CHF is non-severe is supported by substantial evidence in the record and should therefore not be disturbed.[3]

## B. The ALJ Sufficiently Developed the Record

Plaintiff also contends that the ALJ failed to develop a full and fair record as he is required to do. Id. at 13-15. Specifically, Plaintiff contends that a spirometry (breath measurement) report was incomplete and that the ALJ should have ordered a medical source statement or "proper consultative examination." Id. at 13. As a result of this alleged error, Plaintiff asserts that the ALJ improperly concluded that she has the RFC to perform her past

---

[3]The Court notes Plaintiff's conclusory statement that the AC failed to consider Dr. Sheppard's "opinions and/or diagnoses." Pl.'s Br., p. 10. However, Plaintiff provides no elaboration on this argument whatsoever. Accordingly, the Court will not address this issue. (See doc. no. 7, p. 3 ("The issues before the Court are limited to the issues properly raised in the briefs.").)

10

relevant work as a waitress and convenience store clerk. Id. at 15.

In response, the Commissioner argues that the record was adequately developed to evaluate Plaintiff's impairments. Comm'r's Br., pp. 7-12. The Commissioner further contends that Plaintiff's argument that the record was not properly developed lacks credibility in light of the failure of Plaintiff's counsel to request additional examinations or procedures when the ALJ agreed to hold the record open following Plaintiff's video hearing. Id. at 8. The Commissioner has the better arguments.

It is true that an ALJ has a basic obligation to develop a full and fair record, even if the claimant is represented by counsel. Cowart v. Schweiker, 662 F.2d 731, 737 (11th Cir. 1981); see also Miles v. Chater, 84 F.3d 1397, 1401 (11th Cir. 1996) (*per curiam*) (stating that ALJ is "duty-bound to develop a full and fair record"). Notwithstanding this duty, Plaintiff, not the Commissioner, bears the burden of producing medical evidence of impairment. Bowen v. Yuckert, 482 U.S. 137, 146 (1987). Simply put, "[i]t is not unreasonable to require the claimant, who is in a better position to provide information about [her] own medical condition, to do so." Id. at 146 n.5; see also Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003) ("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that [she] is disabled, and, consequently, [she] is responsible for producing evidence in support of [her] claim." (citations and quotations omitted)).

In addition, under 20 C.F.R. §§ 404.1519a and 416.919a, the Social Security Administration may purchase a consultative examination and use the resultant report to try to resolve conflicts or ambiguities in the record. Although a complete examination generally

includes a statement about what the claimant can still do despite his or her impairments, the absence of such a statement does not render the record incomplete. 20 C.F.R. §§ 404.1519n(c)(6), 416.919n(c)(6). Moreover, the Commissioner is not obligated to obtain a complete consultative examination where only specific information, such as laboratory testing, is needed to complete the record. 20 C.F.R. §§ 404.1519n(d), 416.919n(d).

Here, the record contained a multitude of medical reports to which the ALJ cited. Specifically, the ALJ discussed a detailed physical examination of Plaintiff performed on July 5, 2009, which showed *mild* symptoms of chronic obstructive pulmonary disease that according to Dr. Sheppard were likely secondary to Plaintiff's long history of cigarette use. R. 14, 259, 268-71. The ALJ also noted that an echocardiogram performed in July of 2007 showed an ejection fraction[4] of 74%, a finding that *"certainly would not be consistent with systolic dysfunction."* R. 15, 270. Although a second echocardiogram performed that month revealed an ejection fraction of 55%, along with some diastolic dysfunction, the ALJ noted that Plaintiff's ejection fraction rose to 70% following a right and left heart catheterization. R. 15, 383-86.

Further, the ALJ noted that spirometry testing on November 30, 2007 revealed only a *mild* restriction in Plaintiff's breathing. R. 15, 444-57. The ALJ observed that when Plaintiff returned to Dr. Sheppard's office in January of 2009, Plaintiff's breathing sounds were clear, and as noted above, there were no signs of CHF exacerbation despite the fact that

---

[4]According to a medical website, "ejection fraction" is the measurement of the percentage of blood leaving the heart each time it contracts. A normal ejection fraction is 55 to 70 percent. See http://www.mayoclinic.com/health/ejection-fraction/AN00360 (last visited May 10, 2012); see also Comm'r's Br., Ex. 1.

Plaintiff had been off her medications for "at least a year." R. 15, 478. Additionally, the ALJ discussed another detailed examination report performed on May of 2009, when Plaintiff was admitted to the hospital for bronchitis. R. 15, 489-91.

Plaintiff first argues that the spirometry report noted above is "clearly not a 'consultative examination'" because it contains only breathing tests without a detailed medical report, diagnoses, or a statement regarding Plaintiff's limitations. Pl.'s Br., p. 13. Yet as previously explained, it is not necessary for the Commissioner to obtain a complete consultative examination where only specific information is needed to complete the record. 20 C.F.R. §§ 404.1519n(d), 416.919n(d). Moreover, as noted above, the record contained two detailed physical examination reports, both of which the ALJ discussed at length in his decision. R. 14, 15, 268-71, 489-91. Although Plaintiff is clearly dissatisfied with the spirometry report, she provides no explanation for what information should have been in the report or what additional testing or opinions may have revealed.

Indeed, Plaintiff's argument appears generally to be that the ALJ should have ordered a consultative exam that would have been more favorable to her. Yet as the Commissioner persuasively argues, the mere fact that the record does not contain such a report is an insufficient reason to remand this case. Comm'r's Br., p. 10. What is more, as pointed out above, despite the fact that the spirometry report only revealed *mild* restrictions in Plaintiff's breathing, the ALJ nevertheless took this finding into consideration by assigning Plaintiff to an RFC for light, rather than medium, work. R. 18.

Second, in support of her general argument that the ALJ failed to properly develop the record, Plaintiff cites to two cases that were remanded for an ALJ's failure to obtain

13

statements from a medical source about the claimants' functional limitations. Pl.'s Br., pp. 14-15 (citing Rease v. Barnhart, 422 F. Supp. 2d 1334 (N.D. Ga. 2006); Hernandez v. Barnhart, 203 F. Supp. 2d 1341 (S.D. Fla. 2002)). However, these cases are distinguishable from the instant case.

In Rease, after the ALJ offered to hold the record open to permit additional evidence, the plaintiff submitted new medical records and asked the ALJ to subpoena certain other medical records that the plaintiff had been unable to obtain. Rease, 422 F. Supp. 2d at 1373. Despite the ALJ's offer, however, the court found that the record was "devoid of any evidence that the ALJ acknowledged or responded to the [plaintiff's] requests. . . ." Rather, the ALJ cited old records without considering the new evidence, subpoenaing the requested records, or otherwise ordering a consultative examination. Id. at 1373-74. Because such information was critical to a determination of plaintiff's functional limitations, the court concluded that the ALJ's decision lacking that information was not supported by substantial evidence. Id.

In Hernandez, the court found that the ALJ's RFC assessment, which was based on the opinion of a non-examining State Agency physician, was not supported by substantial evidence because the RFC did not match the State Agency physician's statements. Hernandez, 203 F. Supp. 2d at 1355. Under the circumstances, the court concluded that the ALJ had therefore "played the role of medical expert, interpreted the raw psychological and medical data, and drew her own conclusions as to the [plaintiff's] RFC." Id. (citations omitted). Accordingly, the court found that the ALJ's RFC finding was not supported by substantial evidence. Id.

In this case, by contrast, the record reflects that the ALJ offered to keep the record open following Plaintiff's video hearing. R. 30. Despite this opportunity, Plaintiff neither submitted additional medical records nor did she request a consultative examination, undermining her assertion that the record was insufficiently developed. Indeed, the Court notes that on the date of the hearing, counsel for Plaintiff expressed the opinion that the evidence should authorize a finding that Plaintiff is disabled. R. 238. In other words, this case does not present a situation where the ALJ was required to consider new information or resolve conflicts or ambiguities in the record. 20 C.F.R. §§ 404.1519a, 416.919a.

Moreover, the ALJ's RFC finding was consistent with that of the State Agency physicians, Marvin Bittinger, M.D., and Ramona Minnis, M.D., both of whom opined that Plaintiff was capable of performing at least light exertional work. R. 19, 458-65, 466-73. The Court acknowledges Plaintiff's argument that the ALJ erroneously relied on these opinions because Dr. Bittinger and Dr. Minnis did not have the benefit of spirometry testing showing that she experienced mild restrictions in her breathing. Pl.'s Br., pp. 12-13. Yet a review of Dr. Bittinger's and Dr. Minnis's reports reveals that each cited to the November 30, 2007 spirometry report in their opinions, clearly contradicting this assertion. R. 465, 473. Put plainly, the situations presented in Rease and Hernandez are not present here.

Simply put, absent any showing that additional evidence was needed to render a decision based upon substantial evidence, the Court will not penalize the Commissioner for Plaintiff's failure to produce relevant evidence. See Ellison, 355 F.3d at 1276. Plaintiff's argument regarding the ALJ's duty to develop the record accordingly provides no basis for remand.

15

### C. Use of VE Testimony

Plaintiff next argues that the ALJ's hypothetical question to the VE was incomplete because it did not include all of Plaintiff's impairments. Pl.'s Br., pp. 10-12. Specifically, she asserts that "[t]he record is well documented with evidence" that she tired easily on exertion and was "greatly impaired" in her ability to lift anything over five pounds; that she had a breathing disorder; that she suffered periodic exacerbations in her heart condition, and that her ejection fraction limited her ability to sustain light work. Pl.'s Br., p. 11. Plaintiff further argues that if the ALJ's hypothetical to the VE had included these limitations, she would have been assessed with, at best, an RFC for sedentary work. Id. The Commissioner argues that Plaintiff has cited no credible evidence to support her assertion that she is limited to sedentary work and she has failed to identify any limitations that should have been included in the hypothetical to the VE. Comm'r's Br., pp. 6-7. The Court resolves the matter as follows.

> At Plaintiff's video hearing, the ALJ submitted the following hypothetical to the VE:
>
> ... [W]ould you make these assumptions, for a hypothetical individual, age range of 50 to 62, 10th grade education, the same past work shown on the revised past relevant work report. Assume further that all functions not mentioned in the hypothetical can be performed. And that refers to all exertional as well as non-exertional. And exertional ability is light. With these additional restrictions, climbing of stairs and ramps is occasional, cannot do it more than occasional. However, never climb ladders or scaffolds. And I would say never engage in balancing, and by that I mean, walking on a narrow elevated surface, can only walk on a flat floor. In addition, concentrated exposure to the following must be avoided. Not necessarily total avoidance but concentrated, avoid concentrated exposure. Heights, unprotected heights and moving machinery; temperature extremes; irritants or pollutants like chemicals, dust, fumes, smoke and humidity, high humidity.

R. 24. The VE testified that such an individual would be capable of performing Plaintiff's

past work as a waitress or as a convenience store clerk, both as those jobs are generally performed in the national economy. R. 25.

Of course, the underlying assumptions of hypothetical questions must accurately and comprehensively reflect the claimant's characteristics, and a reviewing court must determine whether they are supported by substantial evidence. McSwain v. Bowen, 814 F.2d 617, 619-20 (11th Cir. 1987) (*per curiam*); Pendley v. Heckler, 767 F.2d 1561, 1562-63 (11th Cir. 1985) (*per curiam*); see also Jones v. Apfel, 190 F.3d 1224, 1229 (11th Cir. 1999) ("In order for a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question which comprises all of the claimant's impairments."); Coleman v. Barnhart, 264 F. Supp.2d 1007, 1011 (S.D. Ala. 2003) (failing to comprehensively describe a claimant's impairments and limitations is grounds for remanding case for further proceedings).

Here, while the ALJ acknowledged Plaintiff's complaints that she tired easily on exertion and was limited in her ability to lift anything over ten pounds, he observed, "**No physician has ever placed these functional restrictions on [Plaintiff], nor is there any evidence of any documented impairment which would cause these limitations.**" R. 18. Similarly, although Plaintiff complained of shortness of breath, the ALJ noted that spirometry testing showed only *mild* restrictions in Plaintiff's breathing, as set forth above. Id. Moreover, Plaintiff points to no evidence in the record, and the Court is unaware of any, that would contradict the ALJ's findings.

Furthermore, as explained *supra*, Part III.A., the ALJ's determination that Plaintiff's CHF was non-severe is supported by substantial evidence, and there was accordingly no need for the ALJ to include limitations based on this impairment in his hypothetical to the VE. See Loveless v. Massanari, 136 F. Supp.2d 1245, 1250-51 (M.D. Ala. 2001) ("[T]he

17

hypothetical question posed by the ALJ may omit non-severe impairments.") Finally, Plaintiff's argument that her ejection fraction measurement of 70% presents "a medical limitation that would limit [her] sustained capacity to engage in light or heavier work," is likewise without merit. As noted above in note 4, an ejection fraction of 55-70% is considered to be within "normal" range, and Plaintiff provides no explanation for how an ejection fraction in the upper portion of the normal range should have such a limiting effect on her ability to work.

In sum, the ALJ's hypothetical question adequately accounted for Plaintiff's functional limitations, meaning that the ALJ properly relied upon the VE's testimony in response to that question. Accordingly, the ALJ's determination that Plaintiff could return to her past relevant work is supported by substantial evidence.[5]

## IV. CONCLUSION

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** that the Commissioner's final decision be **AFFIRMED**, that this civil action be **CLOSED**, and that a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 14th day of May, 2012, at Augusta, Georgia.

W. LEON BARFIELD
UNITED STATES MAGISTRATE JUDGE

---

[5] While Plaintiff additionally argues that the evidence demands a finding that she is disabled under the Grids, this argument is premised upon her contention that she has the RFC for no more than sedentary work. Pl.'s Br., pp. 15-16, Pl.'s Reply Br., pp. 1-1. As the Court has found that substantial evidence supports the ALJ's determination that Plaintiff had the RFC for light work, the Court need not address this remaining argument.

18